FIRST DIVISION

July 30, 2001

No. 1-99-4099

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County

)

v. ) )

KEVIN PHELPS, ) Honorable

) Mary Maxwell Thomas,

Defendant-Appellant. ) Judge Presiding

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

A jury found defendant, Kevin Phelps, guilty of aggravated kidnaping and heinous battery.  The trial court imposed consecutive sentences for the offenses.  Defendant challenges both the convictions and the sentences on appeal.  He argues that the prosecution failed to prove he secretly confined the victim, the prosecutor's closing argument misstated the evidence, and the court improperly used the fact that he caused great bodily harm to doubly enhance his sentence.

P.H., a high school student, befriended defendant, a paraplegic, late in 1996.  She knew defendant by his nickname, Sniper, and he called her by a nickname few people knew.  Through most of the summer of 1997, P.H. went to visit defendant about every other day.  In August 1997 P.H.'s older sister and legal guardian grounded her, instructing her not to see defendant.

P.H. left the high school after 4 p.m. on September 4, 1997.  She returned home around 8 p.m., screaming "Sniper burnt me."  P.H.'s sister called for an ambulance.  Doctors at the hospital found that P.H. had suffered second and third degree burns over 36% of her body.  She remained in the intensive care unit for two weeks, undergoing multiple skin grafts and other treatments to help her skin heal.  She has prominent, permanent scars.  Police arrested defendant and charged him with heinous battery, aggravated kidnaping and attempted murder.

At trial P.H. testified that when she left the high school on September 4, 1997, two men called to her, using the nickname defendant and few others used.  One man said, "Folks said come get your stuff."  P.H. knew the man meant defendant, because his home was the only place she had left anything.  She told the men she would get the stuff later, and she caught a city bus to go home.  When she got off the bus, the men drove up behind her.  One pulled her jacket and told her to get in the car.  They took her to defendant's home.

Defendant asked P.H. where she had been, what she had been doing, and whom she had been seeing for the prior weeks.  She explained that her sister had grounded her.  He asked the same few questions repeatedly for an hour.

Defendant then told P.H. to take off her clothes.  When she refused he pulled out a gun and told her again to take off her clothes.  She took them off.  He threw a cup full of liquid on her, and he threw a lit cigarette lighter at her.  The skin of her stomach and legs immediately went up in flames.  P.H. ran to the bathroom and put out the fire, but she had no way to leave the house without passing defendant again.  She talked with him for more than an hour before finally persuading him to let her dress and leave.  She agreed to tell her sisters a stranger abducted her, raped her and burned her.

On cross-examination P.H. admitted that defendant never said she could not leave.  Some time before he burned her, he asked her to get him a glass of water.  When she went to the kitchen, she was out of his sight, but she made no attempt to flee.  She explained that from defendant's tone and his reputation she understood that she would put herself in peril if she left.

In closing the prosecutor argued, without objection, that the men who met P.H. said "Sniper[] wants to see you."  The prosecutor later added:

"[Defendant] told her she couldn't leave.

*** He says, 'You can't leave.  Remove your clothes.'

She could not leave at that point."

Defense counsel in closing reminded the jurors of P.H.'s testimony that defendant never said she could not leave.

The jury acquitted defendant on the charge of attempted murder, but found him guilty on the charges of heinous battery and aggravated kidnaping.  The trial court sentenced defendant to 30 years in prison for heinous battery and 15 years in prison for aggravated kidnaping.  The court also found that section 5-8-4(a) of the Unified Code of Corrections mandated consecutive sentences for the charges.  730 ILCS 5/5-8-4(a) (West 1996).

On appeal defendant argues first that the prosecution failed to prove him guilty of kidnaping.  The prosecutor argued that defendant committed the crime when he pulled out a gun and told P.H. to undress.  At that point, defendant secretly confined P.H., within the meaning of the statutory definition of kidnaping, against her will.

To establish secret confinement under section 10-1(a)(1) of the Criminal Code of 1961 (720 ILCS 5/10-1(a)(1) (West 1996)), the prosecution must show a confinement, usually in an enclosure like a house or a car (
People v. Lloyd
, 277 Ill. App. 3d 154, 163, 660 N.E.2d 43 (1995)), concealed from the knowledge of persons who would be affected by the act (
People v. Turner
, 282 Ill. App. 3d 770, 780, 668 N.E.2d 1058 (1996)).  The secrecy of either the place of confinement or of the fact that a person is confined suffices for the secrecy element of kidnaping.  
People v. Sykes
, 161 Ill. App. 3d 623, 628, 515 N.E.2d 253 (1987).

In 
People v. Enoch
, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988), the defendant entered the victim's office at work, and several of the victim's coworkers saw her go with defendant to the victim's apartment.  In the apartment the defendant bound the victim to a chair and did not answer the door or the telephone when people tried to contact the victim.  Our supreme court affirmed the conviction for aggravated kidnaping, holding that the evidence showed that no one knew the defendant had confined the victim in her apartment.  
Enoch
, 122 Ill. 2d at 195-96; see also 
People v. Mulcahey
, 72 Ill. 2d 282, 285, 381 N.E.2d 254 (1978).

Here, defendant confined P.H. when he drew a gun and ordered P.H. to undress.  She could not then leave the enclosure of defendant's home.  No one knew of the confinement.  In particular, P.H.'s guardian, who would be most directly affected, did not know defendant was keeping P.H. in his home against her will.  The crime became aggravated kidnaping when he burned her, inflicting great bodily harm, during her secret confinement.  See 720 ILCS 5/10-2(a)(3)(West 1996).  The prosecution presented sufficient evidence to support the conviction for aggravated kidnaping.

Next, defendant contends that the prosecutor made two misrepresentations in closing arguments, and those statements deprived him of a fundamentally fair trial.  Because defense counsel did not object to the statements, we limit our review to a determination of whether plain error occurred.  See 
People v. Turner
, 282 Ill. App. 3d 770, 781, 668 N.E.2d 1058 (1996).

Defense counsel, in cross-examining P.H., elicited her admission that defendant never said she could not leave his home.  The prosecution argued that by drawing a gun and telling P.H. to undress, defendant effectively told her she could not leave.  In response, defense counsel reminded the jurors that defendant never actually said P.H. could not leave.  We see no basis for concluding that the prosecutor's argument seriously misled the jurors.  See 
People v. Edgeston
, 157 Ill. 2d 201, 219-20, 623 N.E.2d 329 (1993).

P.H. testified that a man outside the school said "Folks" wanted her to get her stuff.  She knew that the man meant defendant wanted her to come over.  The prosecutor recounted the testimony as evidence that the man said "Sniper[] wants to see you."  Again, the paraphrase did not seriously prejudice defendant.  See 
People v. Williams
, 181 Ill. 2d 297, 330, 692 N.E.2d 1109 (1998).  We find no plain error.

Defendant raises several issues concerning his sentencing.  He concedes that the prosecution presented sufficient evidence of a battery, with the class of offense increased to heinous battery because defendant caused severe and permanent disfigurement by means of a flammable substance.  720 ILCS 5/12-4.1(a)(West 1996).  While battery is a Class A misdemeanor, heinous battery is a Class X felony.  720 ILCS 5/12-3(b), 12-4.1(b) (West 1996).  The prosecution also proved a kidnaping, increased to aggravated kidnaping because defendant inflicted great bodily harm on P.H.  720 ILCS 5/10-2(a)(3)(West 1996).  Kidnaping is a Class 2 felony, but aggravated kidnaping is a Class X felony.  720 ILCS 5/10-1(c), 10-2(b)(West 1996).  Defendant argues that the use of closely related factors to increase the level of both crimes constitutes improper double enhancement.

"[T]he legislature has the power to codify provisions which enhance a criminal offense (
e.g.
, misdemeanor to a felony) or enhance the applicable range of punishment (
e.g.
, extended term sentence or Class X sentencing).  This is known as 'single enhancement.'   Double enhancement occurs when a factor already used to enhance an offense or penalty is reused to subject a defendant to a further enhanced offense or penalty.  For example, the same factor has been used to double enhance an offense (
People v. Haron
, 85 Ill. 2d 261[, 422 N.E.2d 627] (1981) (offense enhanced from misdemeanor battery to felony aggravated battery and from aggravated battery to Class X felony armed violence based on use of a deadly weapon)), a punishment (
Fitzsimmons v. Norgle
, 104 Ill. 2d 369[, 472 N.E.2d 802] (1984) (defendant transferred from juvenile to adult criminal court and probation precluded as potential punishment based on same prior conviction)), or some combination of the two (
People v. Hobbs
, 86 Ill. 2d 242[, 427 N.E.2d 558] (1981) (misdemeanor theft enhanced to a felony theft and extended term sentence imposed based on same prior conviction))."  
People v. Thomas
, 171 Ill. 2d 207, 223-24, 664 N.E.2d 76 (1996).

While the legislature has the power to authorize such a double enhancement, the legislature must express the intention clearly and unambiguously.  
People v. Rissley
, 165 Ill. 2d 364, 390-91, 651 N.E.2d 133 (1995); 
People v. Ferguson
, 132 Ill. 2d 86, 97, 547 N.E.2d 429 (1989).  Otherwise, double enhancement is improper.  
People v. Koppa
, 184 Ill. 2d 159, 174, 703 N.E.2d 91 (1998).  The court presumes that when the legislature established the range of penalties for an offense, it took into account all of the factors inherent in the offense.  
Ferguson
, 132 Ill. 2d at 97.

No case or rule forbids multiple uses of single enhancement factors to increase the levels of separate crimes.  The legislature decided that a battery involving permanent disfigurement by means of a flammable substance deserves punishments in the range for Class X felonies, and kidnapings involving great bodily harm deserve punishments in the range for Class 1 felonies.  The prosecution proved defendant guilty of all elements of both crimes.  We find no double enhancement in the use of similar factors in the aggravation of both crimes.  Defendant offers no further challenge to the sentences for each individual offense, so we affirm the sentences.

But defendant argues that the trial court doubly enhanced his sentence impermissibly by reusing the factor of great bodily harm to justify the further order for consecutive service of the sentences.  Section 5-8-4 of the Unified Code of Corrections provides:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury *** in which event the court shall enter sentences to run consecutively."  730 ILCS 5/5-8-4(a) (West 1996).

The appellate court interpreted this statute in 
People v. Miller
, 193 Ill. App. 3d 918, 552 N.E.2d 988 (1989).  In that case the trial court found the defendant guilty of the voluntary manslaughter of two persons in a single course of conduct without change in the nature of the crime.  Because the two Class 1 felonies resulted in great bodily harm, the court imposed consecutive sentences pursuant to section 5-8-4.  The appellate court held:

"[T]he prohibition against double penalty enhancement is violated where a trial court considers as aggravation for a greater penalty a factor which is implicit in the offense for which the defendant is being sentenced.  In 
People v. Conover
 (1981), 84 Ill. 2d 400, 419 N.E.2d 906, the supreme court held it was error to consider as aggravation on a theft or burglary sentence the fact that the defendant received compensation from the offense because the taking of proceeds was inherent in these offenses.  Thus, this compensation factor had already been considered by the legislature in establishing the sentencing range.  This same reasoning has been applied when a sentencing court has considered as aggravation the fact that the defendant threatened harm during an armed robbery because the threat of harm is inherent in an armed robbery. [Citations.] 

***

*** Obviously, defendant *** inflicted severe bodily injury because he caused [the victims'] deaths, the ultimate of severe bodily injury.  However, their deaths were intrinsically factored into his voluntary manslaughter convictions.  To again use these deaths to impose a consecutive sentence was improper."  
Miller
, 193 Ill. App. 3d at 931-32.

Accordingly, the court affirmed the sentences but modified them to run concurrently.

The appellate court in 
People v. Durham
, 303 Ill. App. 3d 763 (1999), rejected the reasoning and result of 
Miller
.  Our supreme court subsequently vacated 
Durham
, and on remand the appellate court did not address 
Miller
.  
People v. Durham
, 312 Ill. App. 3d 413, 727 N.E.2d 623 (2000).  In the vacated opinion the court reasoned:

"A reading of the clear and unambiguous language of section 5-8-4 does not allow for the interpretation given in 
Miller
.   Any severe bodily harm caused by a defendant is by necessity going to be included in one of the charges for which defendant is to be sentenced.  Under defendant's theory, if [the victim] had been more severely wounded by the bullet that hit him, that injury could not have been used to mandate consecutive sentences either, as the injury would have been an essential element of the aggravated battery with a firearm.  Only uncharged crimes causing severe bodily injury could be used to mandate consecutive sentences.  This would be a ridiculous result."  
Durham
, 303 Ill. App. 3d at 770-71.

The vacated opinion misreads 
Miller
.  Under 
Miller
, the statute mandates consecutive sentences if the defendant is convicted of two or more crimes, including any Class X or Class 1 felony that does not include great bodily harm as an element of the crime, and the defendant caused great bodily harm in the course of committing the Class X or Class 1 felony.  Thus, if a defendant committed an aggravated kidnaping of a profoundly retarded person, and he inflicted great bodily harm during the secret confinement, the sentence for aggravated kidnaping would run consecutively to the sentence for any other offense the defendant committed in the same course of conduct.  See 720 ILCS 5/10-2(a)(2), (b)(West 2000).  Attempted murder, a Class X felony that need not involve bodily harm (720 ILCS 5/8-4(a), (c)(1) (West 2000)), and armed robbery and residential burglary, Class 1 felonies that need not involve bodily harm (720 ILCS 5/18-2(a), (b), 19-3(a), (b)(West 2000)), similarly require consecutive sentencing.  If the defendant causes great bodily harm in the course of an attempted murder, armed robbery or residential burglary, and he commits another crime in the same course of conduct, section 5-8-4 directs that the sentence imposed for the Class X or Class 1 felony must be served consecutively to the sentence imposed for the other crime.  We find no absurdity in the 
Miller
 court's construction of section 5-8-4.  We note that the result in 
People v. Porter
, 277 Ill. App. 3d 194, 660 N.E.2d 118 (1995), comports with the reasoning of 
Miller
, because the court imposed a sentence for murder and correctly ordered the sentences for attempted murder to be served consecutively, after the sentence for murder.

The prosecution charged defendant with a kidnaping enhanced to aggravated kidnaping by the great bodily harm he caused P.H.  The legislature clearly required the court to impose a sentence appropriate for Class X felonies because of the great bodily harm caused in the course of a Class 2 felony.  Nothing in the statute clearly expresses the intention to reuse that same great bodily harm as a basis for the added punishment of consecutive sentencing.  Defendant also committed a battery enhanced to heinous battery because defendant caused severe and permanent disfigurement by means of a flammable substance in the battery.  The proof of an essential element of the crime, severe and permanent disfigurement, included proof of great bodily harm.  The legislature has not clearly expressed an intention to increase the punishment for this crime beyond that available for Class X felonies by reuse of the same bodily harm to require consecutive sentencing.  Following 
Miller
, we modify the sentences here to run concurrently.

Defendant secretly confined P.H. in his home when he took out a gun and ordered her to undress, because no one knew defendant was holding P.H. against her will.  The prosecutor's statements in argument paraphrasing the testimony did not amount to plain error.  The court correctly found that P.H.'s great bodily harm showed that defendant committed both an aggravated kidnaping and a heinous battery.  But that same bodily harm cannot warrant the imposition of consecutive sentences, because great bodily harm was a necessary element of both crimes, and the legislature took into account the harm by increasing the classifications of the crimes to Class X.  Therefore we affirm the convictions and modify the sentences to run concurrently.

Affirmed.

O'MARA FROSSARD and COHEN, JJ., concur.