SECOND DIVISION

December 16, 2003

No. 1-02-2156

THE PEOPLE OF THE STATE OF ILLINOIS, 

Plaintiff-Appellee, 

v.

TAMARA SAWCZENKO-DUB, 

Defendant-Appellant. 

)

)

)

)

)

)

)

)

)

Appeal from the 

Circuit Court of

Cook County.

Honorable

Thomas M. Tucker, 

Judge Presiding.

JUSTICE BURKE delivered the opinion of the court:

Following a bench trial, defendant Tamara Sawczenko-Dub was convicted of first degree murder of her husband, Donald Dub (Don).  The trial court sentenced her to 45 years' imprisonment; 20 years (the minimum) for first degree murder plus the mandatory 25-year enhancement that was added to the sentencing statute (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2000)) by Public Act 91-404 (eff. January 1, 2000) because defendant personally discharged a firearm causing death during the course of the offense.  On appeal, defendant contends that the sentencing scheme is unconstitutional because: (1) it violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, §11), both as written and as applied; (2) it violates separation of powers principles; (3) it violates double jeopardy; and (4) it constitutes an impermissible double enhancement of the offense of first degree murder and her sentence.  Defendant also challenges the sufficiency of the evidence, contending that the trial court should have found her guilty of second degree murder or, alternatively, of involuntary manslaughter.  For the reasons set forth below, we affirm.  

[NONPUBLISHABLE MATERIAL UNDER SUPREME COURT RULE 23 REMOVED HERE]

ANALYSIS

As set forth above, this case involves numerous  constitutional challenges to the first degree murder sentencing statute as amended by Public Act 91-404.  Public Act 91-404 amended the penalty portion of various criminal offenses, including first degree murder, which the legislature deemed "the most serious offenses" (91 Ill. Gen. Assem., House Proceeding, May 13, 1999, at 67-68 (statements of Representative Turner)), by adding what has been referred to as the "15/20/25 to life" mandatory sentence enhancement or add-on provisions when the designated offenses involve the use of a firearm.  See 
People v. Moss
, 206 Ill. 2d 503, 506, 795 N.E.2d 208 (2003).  The relevant provision here provides:

"(a)  Except as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:

(1)  for first degree murder

(a) a term shall not be less than 20 years and not more than 60 years, or

***

(d)(i) if the person committed the offense while armed with a firearm, 15 years shall be added to the term of imprisonment imposed by the court;

(ii)  if, during the commission of the offense, the person personally discharged a firearm, 20 years shall be added to the term of imprisonment imposed by the court;

(iii)  if, during the commission of the offense, the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court."  730 ILCS 5/5-8-1(a)(1)(d)(i), (ii), (iii) (West 2000).

Initially, we note that the law with respect to constitutional challenges to a criminal statute is well-settled:

"A statute is presumed constitutional, and the party challenging the statute bears the burden of demonstrating its invalidity.  [Citation.]  This court has a duty to construe a statute in a manner that upholds its validity and constitutionality if it can reasonably be done.  [Citation.]  The question of whether a statute is constitutional is subject to 
de novo
 review."  
Moss
, 206 Ill. 2d at 519-20.

I.  Proportionate Penalties
(footnote: 1)

The proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship."  Ill. Const. 1970, art. I, §11.  "In evaluating whether a proportionate penalties violation has been established, the central question is whether the penalty at issue has been set by the legislature 'according to the seriousness of the offense.'  [Citation.]"  
Moss
, 206 Ill. 2d at 522,  As stated by the court in 
Hill
, there are three separate tests to identify a proportionate penalties violation:

"First, a penalty violates the proportionate penalties clause if it is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community.  Second, a penalty is invalid under the proportionate penalties clause where similar offenses are compared, and conduct that creates a less serious threat to the public health and safety is punished more severely.  Third, there is a violation of the proportionate penalties clause when identical offenses are given different sentences."
(footnote: 2)  
Hill
, 199 Ill. 2d at 452.

In 
People v. Miller
, 202 Ill. 2d 328, 781 N.E.2d 300 (2002), the court set forth the relevant principles in analyzing the first test, stating:

" 'When the legislature has authorized a designated punishment for a specified crime, it must be regarded that its action represents the general moral ideas of the people, and the courts will not hold the punishment so authorized as either cruel and unusual, or not proportioned to the nature of the offense, unless it is a cruel or degrading punishment not known to the common law, or is a degrading punishment which had become obsolete in the State prior to the adoption of its constitution, or is so wholly disproportioned to the offense committed as to shock the moral sense of the community.'  [Citation.]"  
Miller
, 202 Ill. 2d at 339.

The 
Miller
 court went on to note that it had never defined "what kind of punishment constitutes 'cruel,' 'degrading,' or 'so wholly disproportioned to the offense as to shock the moral sense of the community.' "  
Miller
, 202 Ill. 2d at 339.  The 
Miller
 court stated that this is so "because, as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community."  
Miller
, 202 Ill. 2d at 339.  Thus, the court concluded, "[w]e review the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency."  
Miller
, 202 Ill. 2d at 340.

Under the second test, a two-step, cross-comparison analysis must be conducted.  
Hill
, 199 Ill. 2d at 454.  Specifically, the 
Hill
 court stated that

"[f]irst, we consider whether the purposes of the compared offenses are distinct such that comparative proportionality review is not appropriate.  [Citations.]  Second, if the purposes are deemed related, we consider whether the offense with the harsher penalty is more serious than the offense with the less severe penalty."  
Hill
, 199 Ill. 2d at 454.

With respect to the first part of this test, "it is well settled that if the statutory purposes are different, comparative proportionality review is inappropriate."  
Moss
, 206 Ill. 2d at 523.  With respect to the second part of this test, the 
Hill
 court stated:

"[T]he legislature may perceive a need to enact a more stringent penalty provision in order to halt an increase in the commission of a particular crime.  [Citations.]  As an institution, the legislature is better equipped than the judiciary to identify and remedy the evils confronting our society and is more capable of gauging the seriousness of an offense.  [Citations.]  Thus, courts will generally defer to the legislature's judgment that a particular offense is more serious than another."  
Hill
, 199 Ill. 2d at 454.

A. As Written

Defendant first contends that the sentencing scheme for first degree murder by personally discharging a firearm (hereinafter referred to as the 25-year firearm enhancement provision), set forth in section 5-8-1(a)(1)(d)(iii) (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2000)), violates the proportionate penalties clause of the Illinois Constitution.  Ill. Const. 1970, art. I, §11.  In this regard, defendant relies on the following two bases in support of her argument: that the scheme is so severe that it offends the "moral sense" and that, when compared to other offenses, specifically the commission of murder that is accompanied by brutal and heinous conduct, it punishes more severely a less serious crime.  In a footnote, defendant also argues that the lack of good time credit is unconstitutional.
(footnote: 3)
 With respect to defendant's first basis, she maintains that the automatic 25-year firearm enhancement provision prohibits the trial court from fashioning a sentence that takes into account a defendant's rehabilitative potential.  In other words, according to defendant, the provision forecloses the trial court, in actuality, from giving any weight to mitigation evidence, which, in the instant case, was substantial.  With respect to defendant's second basis, she maintains that a single shot murder, with mitigating circumstances, is automatically punished by 45 years to life, whereas murder, that is accompanied by brutal and heinous conduct,  is punishable by only 20 years to life since the court can weigh mitigating factors in the latter instance.
(footnote: 4)  Defendant argues that this disparity cannot be justified by the legislature's desire to deter the use of firearms.

With respect to the first proportionate penalties test, whether a penalty is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community, defendant's only argument, that the trial court was not able to weigh the mitigation evidence, ignores the fact that the trial court was able to weigh such evidence in determining whether to sentence her to the minimum 20-year sentence, the maximum 60-year sentence, or somewhere in between.  See, 
e.g.
, 
People v. Martinez
, 76 Cal. App. 4th 489, 495, 90 Cal. Rptr. 2d 517, 521 (1999) (noting that, under a similar firearm enhancement provision, "the trial court retains flexibility as to fixing the underlying base term for [the offense]").  Defendant also ignores the fact that the trial court can take into account mitigating factors in fashioning the enhancement sentence.  Specifically, the enhancement sentence ranges from 25 years to life.  
Accordingly, defendant's argument is unpersuasive.

In any event, we find that the 25-year firearm enhancement provision is not so disproportionate to the offense of first degree murder by the personal discharge of a firearm causing injury or death that it shocks the moral sense.  We note that California case law, interpreting its enhancement statute that our Illinois statute is modeled after, is instructive.
(footnote: 5)  The California courts have uniformly concluded that the California firearm enhancement provisions do not result in such a grossly disproportionate sentence as to constitute cruel and unusual punishment.  See, 
e.g.
, 
People v. Zepeda
, 87 Cal. App. 4th 1183, 1212-16, 105 Cal. Rptr. 2d 187, 207-08 (2001); 
Martinez
, 76 Cal. App. 4th at 493-98, 90 Cal. Rptr. 2d at 519-23.  In so finding, the California courts have recognized that severe punishment is warranted for the use of a firearm during a crime because firearms allow a perpetrator to kill effortlessly and are lethal to the victim of the underlying crime and to others in the vicinity.  
Zepeda
, 87 Cal. App. 4th at 1215, 105 Cal. Rptr. 2d at 208.  For example, one court has noted that the use of a firearm in committing a murder has been "adjudged by society through its legislative representatives as particularly egregious and dangerous."  
People v. Hutchins
, 90 Cal. App. 4th 1308, 1313, 109 Cal. Rptr. 2d 643, 647 (2001).  In this regard, the 
Hutchins
 court noted that the firearm enhancement provisions were enacted "in order to deter a particular form of violence judged especially threatening to the social fabric."  
Hutchins
, 90 Cal. App. 4th at 1315, 109 Cal. Rptr. 2d at 647.  Another court has concluded that singling out firearm offenses is warranted because

" '[t]he ease with which a victim of one of the enumerated felonies could be killed or injured if a firearm is involved clearly supports a legislative distinction treating firearm offenses more harshly than the same crimes committed by other means.'  [Citation.]"  
Zepeda
, 87 Cal. App. 4th at 1215, 105 Cal. Rptr. 2d at 207.

More specifically, the 
Zepeda
 court stated:

"A firearm gives a perpetrator a strong advantage over the victim and effectively deters the victim's escape.  A firearm is particularly lethal to the victim of the underlying crime as well as others in the vicinity; and a firearm allows the perpetrator to effortlessly and instantaneously execute an intent to kill once it is formed."  
Zepeda
, 87 Cal. App. 4th at 1215, 105 Cal. Rptr. 2d at 207-08.

Similarly, another court noted that "firearms pose a potentially greater risk to safety than other weapons because of their inherent ability to harm a greater number of victims more rapidly than other weapons," and their ability to " 'inflict deadly wounds on a number of people within a wide area and within a short amount of time.'  [Citation.]"  
People v. Perez
, 86 Cal. App. 4th 675, 678-79, 103 Cal. Rptr. 2d 533, 535 (2001).  See also 720 ILCS 5/33A-1 (West 2002) (the Illinois legislature itself set forth the same reasons and concerns espoused by the California courts, detailed above, in the statutory section entitled, "Legislative Intent").

Given the factors identified above, lethalness, quickness, ease, range, 
etc.
 of the use of a firearm, along with the fact that defendant's conduct subjected an innocent person to a "death sentence," in a society faced with increased incidences of gun usage and a society that has exhibited moral outrage regarding these circumstances, we do not believe that the 25-year firearm enhancement provision is cruel, degrading, or so wholly disproportionate to the offense committed, first degree murder with the personal discharge of a firearm causing injury or death, that it shocks the moral sense of the community.  As the court in 
Morgan
 stated, we should "not second-guess the legislature's determination that the protection of society necessitates the imposition of severe penalties whenever a firearm is used in the course of an offense."  
Morgan
, 203 Ill. 2d at 488.

With respect to the second proportionate penalties test,  requiring a cross-comparison analysis, neither defendant nor the State has undertaken the analysis required by law.  Because it is not this court's duty to make arguments for the parties, particularly defendant here who is challenging the constitutionality of a statute, we do not consider defendant's argument on this basis alone since defendant has waived the issue.  188 Ill. 2d R. 341(e)(7).

Assuming, 
arguendo
, that defendant had not waived this issue, we would nonetheless conclude that a cross-comparison proportionality review is not appropriate here because the statutory purpose of the Public Act 91-404 enhancements and the statutory purpose behind prevention of brutal and heinous murders (the crime relied upon by defendant as the second basis of her argument) are not the same.  The purpose of Public Act 91-404 is "to deter the use of firearms" in the commission of certain felonies.  See 
Moss
, 206 Ill. 2d at 514; 
Morgan
, 203 Ill. 2d at 488; 
Walden
, 199 Ill. 2d at 395; 
Hill
, 199 Ill. 2d at 457, 458; 91st Ill. Gen. Assem., Senate Proceedings, March 25, 1999, at 286 (statement of Senator Dillard).  While the legislature has not defined a purpose with respect to brutal and heinous murders, nor has our independent research located any authority stating the legislative purpose, the purpose certainly and clearly was not to deter the use of firearms in the commission of murder.  A quick perusal of the annotated statute of section 5-8-1 clearly shows that brutal and heinous conduct is as often committed by other means, 
i.e.
, beating, stabbing, 
etc.
, as it is committed with a firearm.  730 ILCS 5/5-8-1 (West 2000).  Because the statutory purposes of the provisions are not the same, a comparative review therefore is not appropriate.  Accordingly, we reject defendant's contention that the 25-year firearm enhancement provision violates the proportionate penalties clause of the Illinois Constitution.
(footnote: 6)

B.   As Applied

In a supplemental brief, defendant contends that the sentencing scheme for first degree murder by personally discharging a firearm violates the proportionate penalties clause as applied to her.  Defendant maintains that for all practical purposes she was sentenced to a life sentence and there were abundant mitigating factors, including the fact that she had never committed a violent crime before, her conduct was not brutal and heinous, she had a history of mental problems and substance abuse, and there was testimony offered that she was a compassionate person.

We do not find the 25-year firearm enhancement provision disproportionate as applied to defendant.  The sentence was not so harsh, cruel, degrading, or shocking to the conscience based on the seriousness of the offense to conclude that it is unconstitutional.  First, defendant received both the minimum underlying sentence and the minimum enhanced sentence.  The seriousness of defendant's conduct is unquestionable--she shot her husband to death.  As we conclude below, defendant armed herself with a shotgun, loaded it to capacity, lured her husband to their apartment, and then sent her children away.  Thereafter, defendant aimed the gun at her husband and pulled the trigger.  Weighed against the facts of the crime are the mitigating factors of lack of criminal history, defendant's mental problems, and evidence that she was a dedicated and devoted person.  The trial court, we must presume, weighed these mitigating factors and, as noted above, gave defendant the minimum of both sentences.  See 
People v. Quintan
, 332 Ill. App. 3d 96, 109, 772 N.E.2d 833 (2002) (appellate court will presume that the trial court considered appropriate factors in sentencing a defendant); 
People v. Zarka-Nevling
, 308 Ill. App. 3d 516, 526, 720 N.E.2d 334 (1999) (where mitigating factors are present, the appellate court presumes the trial court considered them).  Mitigating factors are not entitled to more weight than the seriousness of the offense.  
People v. Pippen
, 324 Ill. App. 3d 649, 652, 756 N.E.2d 474 (2001).  Because the legislature, which we must not second-guess, has concluded that committing first degree murder by personally discharging a firearm necessitates an enhanced sentence and the trial court considered the proper factors in sentencing defendant, even though her sentence may be akin to a life sentence, we do not deem the enhanced sentence unconstitutional in light of the seriousness of defendant's crime.

II.  Separation of Powers

Defendant next contends that the sentencing scheme for first degree murder by personally discharging a firearm violates separation of powers principles because the scheme removes from the judicial branch all discretion to consider and give weight to aggravation and mitigation factors and does not allow the trial court to differentiate among offenders.

In 
Hill
, the defendant argued that the 15-year enhancement for committing home invasion while armed with a firearm, set forth in section 12-11(a)(3) of the Criminal Code of 1961 (Code), violated the separation of powers clause of the Illinois Constitution.  
Hill,
 199 Ill. 2d at 442.  The defendant argued that the "mandatory add-on sentence of 15 years usurps the judiciary's sentencing power by removing its ability to consider aggravating and mitigating factors and to fashion a sentence that is tailored to the circumstances of the offense."  
Hill,
 199 Ill. 2d at 446.  The supreme court disagreed.  
Hill,
 199 Ill. 2d at 446.  The court first concluded that the trial court still retained the ability to consider aggravating and mitigating factors under the sentencing scheme.  
Hill,
 199 Ill. 2d at 447.  The 
Hill
 court then found that the "mandatory sentencing schemes do not inherently usurp the judiciary's power to impose a sentence."  
Hill,
 199 Ill. 2d at 447.  In this regard, the court noted that it had repeatedly held that the legislature has the power to impose mandatory sentences.  
Hill,
 199 Ill. 2d at 447.  Specifically, the 
Hill
 court noted that in those circumstances, the court had found "that the legislature's power necessarily includes the authority to establish mandatory minimum sentences, even though such sentences, by definition, restrict the inquiry and function of the judiciary in imposing sentence."  
Hill,
 199 Ill. 2d at 447.  The 
Hill
 court then noted that the United States Supreme Court has "rejected the constitutional necessity for discretionary sentencing ranges."  
Hill,
 199 Ill. 2d at 448.  Specifically, the 
Hill
 court relied upon 
Chapman v. United States
, 500 U.S. 453, 114 L. Ed. 2d 524, 111 S. Ct. 1919 (1991), in which the Supreme Court stated:

" 'Such a sentencing scheme--not considering individual degrees of culpability--would clearly be constitutional.  
Congress has the power to define criminal punishments without giving the courts any sentencing discretion
.  [Citation.]   Determinate sentences were found in this country's penal codes from its inception [citation] and some have remained until the present.  [Citations.]  A  sentencing scheme providing for 'individualized sentences 
rests not on constitutional commands, but on public policy enacted into  statutes
.'  (Emphases added.)  [Citations.]"  
Hill
, 199 Ill. 2d at 448.

Based upon the above authority, the 
Hill
 court noted that "discretionary sentencing power did not always lie squarely within the judiciary."  
Hill,
 199 Ill. 2d at 449.  In concluding that the sentencing scheme at issue did not "place an unconstitutional limit on the judiciary's power to adjudicate, pronounce judgment, impose sentence, interpret the law, or carry it into effect," the court specifically stated:

"When the legislature implements a mandatory sentencing scheme, however, it necessarily restricts the judiciary's discretion and its ability to consider aggravating and mitigating factors.   [Citations.]  

We conclude that defendant has failed to show that the legislature exceeded its authority in implementing section 12-11(a)(3)'s mandatory add-on sentencing scheme.  Generally, aggravating and mitigating factors need not necessarily be a part of the sentencing equation if the legislature deems such factors inappropriate.  The legislature has the power to fix the sentence for a crime and, in turn, limit the scope of judicial discretion with respect to imposing the sentence."  
Hill
, 199 Ill. 2d at 450-51.

Although 
Hill
 involved an enhancement to home invasion, as opposed to first degree murder in the instant case, we do not find this fact precludes the applicability of the 
Hill
 court's rationale regarding the legislature's "power to fix the sentence for a crime."  
Hill
, 199 Ill. 2d at 450-51.  The defendant's argument in 
Hill
 was the same as defendant's argument here, 
i.e.
, the legislature's sentencing scheme removes all discretion from the judiciary.  This argument was the core of the 
Hill
 court's analysis.  See also 
Olivo v. State
, 823 So. 2d 872, 872-73 (Fla. App. 2002) (rejecting the defendant's argument that the Florida firearm enhancement statute violates separation of powers principles and noting that two other districts of the appellate court had also done so).  Accordingly, we reach the same result here and conclude that the 25-year firearm enhancement to first degree murder does not violate separation of powers principles for the reasons espoused in 
Hill
.

III.  Double Jeopardy

Defendant next contends that the 25-year firearm enhancement provision violates double jeopardy.  Defendant maintains that she was placed in jeopardy for first degree murder, which depended upon her discharging a firearm, and then the same factor, discharge of a firearm, subjected her to additional penalties.

As stated by the 
Moss
 court,

"[t]he double jeopardy clause *** affords three protections to the criminal defendant.  'The first two, which are the most familiar, protect against a second prosecution for the same offense after acquittal, and against a second prosecution for the same offense after conviction.'  [Citation.]  The third safeguard, which is the one at issue here, protects against multiple punishments for the same offense."  
Moss
, 206 Ill. 2d at 535-36.

Thus, the question here is whether defendant is being punished more than once for the same offense.  
People v. Ollie
, 333 Ill. App. 3d 971, 990, 771 N.E.2d 529 (2002).

In the instant case, defendant was punished for the murder of her husband with a 20-year sentence.  It was irrelevant whether she used a firearm in committing the murder or not.  Once the State proved she killed her husband and that she had the requisite intent, she was subject to imprisonment of, at the least, 20 years.  This sentence did not punish her for use of a firearm.  Again, she was punished for killing her husband, however that may have occurred.  Only after this was the 25-year enhancement provision triggered by the use of a firearm element.  In 
Moss
, the defendants raised a double jeopardy challenge to the enhancement provision with respect to armed robbery.  The 
Moss
 court found that a defendant was subject to a Class X sentence for armed robbery even if the offense did not involve a firearm.  As such, the mandatory 15-year enhancement to a Class X offense with a firearm did not constitute multiple punishment for the firearm element.  
Moss
, 206 Ill. 2d at 536.  With respect to the 25-year enhancement, the court reached the same conclusion, finding that the part of the sentence triggered by the firearm element was the 25-year sentence.  
Moss
, 206 Ill. 2d at 536.  Accordingly, the 
Moss
 court concluded that the use of a firearm element did not constitute multiple punishment and, therefore, did not result in any double jeopardy violation.  
Moss
, 206 Ill. 2d at 537.

Also instructive on this issue is the California case of 
Hutchins
.  In 
Hutchins
, a California statute was in existence that specifically prohibited multiple punishments for a single act (section 654).  
Hutchins
, 90 Cal. App. 4th at 1312, 109 Cal. Rptr. 2d at 645.  The defendant challenged the California firearm enhancement provision as violating this statute.  The 
Hutchins
 court rejected the defendant's argument, stating:  

"The manner in which any crime is accomplished may vary in innumerable respects.  ***  Section 654 is not implicated by the imposition of a sentencing enhancement on a particular manner of committing murder--with the use of a firearm--adjudged by society through its legislative representatives as particularly egregious and dangerous."  
Hutchins
, 90 Cal. App. 4th at 1313, 109 Cal. Rptr. 2d at 647.  

Rather, according to 
Hutchins
,

"[w]hat the Legislature has done by enacting [the firearm enhancement provisions] is not to punish the same single criminal act more than once or in more than one way.  Instead, in determining that a criminal offender may receive additional punishment for any single crime committed with a firearm, the Legislature has chosen to enhance or expand the punishment imposed on a single underlying crime, where committed by use of a firearm, in order to deter a particular form of violence judged especially threatening to the social fabric."  
Hutchins
, 90 Cal. App. 4th at 1313-14, 109 Cal. Rptr. 2d at 647.

The 
Hutchins
 court then stated:

"[The defendant's] 'use of the firearm was not a crime in and of itself.  The crime was the extinction of a human life....  The gun was simply the method selected by [the defendant] to accomplish the crime, and the particular method selected subjects [him] to an additional penalty.  Because the underlying crime and the enhancement are not identical, there is and can be no double punishment.'  [Citation.]"  
Hutchins
, 90 Cal. App. 4th at 1314, 109 Cal. Rptr. 2d at 647.  

In conclusion, the 
Hutchins
 court stated:

"[T]he statute's purpose quite specifically is to deter persons from inflicting great bodily injury or death through the intentional discharge of firearms in the commission of such felonies, the exact result of the offense which occurred here [second degree murder].  'To refrain from imposing the enhancement would contradict the exact terms of the statute, preventing the imposition of the enhancement in many instances of murder, manslaughter and attempted murder, the most vicious results of [personally and intentionally] discharging a weapon [in the commission of a felony].  Imposing the enhancement fulfills the legislative purpose of punishing more severely those crimes which actually result in great bodily injury.  [Citation.]'  ***  '[Any contrary] result would undermine the intent of the legislation.'  [Citation.]"  
Hutchins
, 90 Cal. App. 4th at 1314, 109 Cal. Rptr. 2d at 647.

Based on the principles espoused in 
Hill
 and 
Hutchins
, we therefore find no double jeopardy violation in the instant case.

IV.  Double Enhancement
(footnote: 7)

In a second supplemental brief, defendant contends that the sentencing scheme for first degree murder by personally discharging a firearm creates an impermissible double enhancement of the offense and sentence because the element of causation of death is both an element of the offense of first degree murder and an aggravating factor for imposition of the 25-year enhancement sentence.  

Double enhancement of an offense and sentence is generally improper unless there is a clear legislative intent to the contrary.  
People v. Koppa
, 184 Ill. 2d 159, 174, 703 N.E.2d 91 (1998).  See also 
People v. Ferguson
, 132 Ill. 2d 86, 97, 547 N.E.2d 429 (1989).  It appears that there are two different definitions or theories of thought with respect to double enhancement.  The first theory states: "Double enhancement occurs when a single factor is used 'both as an element of a defendant's crime 
and
 as an aggravating factor justifying the imposition of a harsher sentence than might otherwise have been imposed.'  (Emphasis in original.)"  
Moss
, 206 Ill. 2d at 533.  " 'Thus, to use one of those 
same
 factors that make up the offense as the basis for imposing a harsher penalty than might otherwise be imposed constitutes a double use of a single factor.'  (Emphasis in original.)"  
Moss
, 206 Ill. 2d at 533.  See also 
People v. Rissley
, 165 Ill. 2d 364, 390, 651 N.E.2d 133 (1995); 
Ferguson
, 132 Ill. 2d at 97; 
People v. Milka
, 336 Ill. App. 3d 206, 235, 783 N.E.2d 51 (2003); 
People v. Thompson
, 331 Ill. App. 3d 948, 958, 773 N.E.2d 15 (2002); 
People v. Carney
, 327 Ill. App. 3d 998, 1003, 765 N.E.2d 1028 (2002); 
People v. Sample
, 326 Ill. App. 3d 914, 930, 761 N.E.2d 1199 (2001).  This theory is premised upon the assumption that the legislature considered the factors inherent in an offense in determining the appropriate sentence range.  
Rissley
, 165 Ill. 2d at 390.

The second theory has stated the rule as follows: "It is well established that double enhancement occurs when a factor previously used to enhance an offense or penalty is again used to subject a defendant to a further enhanced offense or penalty."  
Koppa
, 184 Ill. 2d at 174.  See also 
People v. Thomas
, 171 Ill. 2d 207, 223, 664 N.E.2d 76 (1996); 
Ollie
, 333 Ill. App. 3d at 989; 
People v. Phelps
, 329 Ill. App. 3d 1, 6, 768 N.E.2d 168 (2002); 
People v. Watkins
, 325 Ill. App. 3d 13, 20, 757 N.E.2d 117 (2001); 
People v. Phelps
, 324 Ill. App. 3d 695, 700, 755 N.E.2d 36 (2001); 
People v. Childress
, 321 Ill. App. 3d 13, 28, 746 N.E.2d 783 (2001); 
People v. Becker
, 315 Ill. App. 3d 980, 995, 734 N.E.2d 987 (2000).  This theory is based upon the view that

" 'the legislature has the power to codify provisions which enhance a criminal offense (
e.g.
, misdemeanor to a felony) or enhance the applicable range of punishment (
e.g.
, extended term sentence or Class X sentencing).  This is known as "single enhancement."  '  [Citation.]"  
Phelps
, 324 Ill. App. 3d at 700.

Initially, we note that although defendant here focuses on the "causation of death" as the appropriate factor to be used in our analysis, which clearly is an element of first degree murder, the focus and basis of the enhancement provisions here are the 
use of a firearm
 in the commission of certain felonies.  See 
Moore
, 343 Ill. App. 3d at ___ (rejecting the defendant's argument that the proper factor to be considered in double enhancement analysis was causation of a death and finding that the proper factor to analyze was the use of a firearm).  How the firearm was used is subordinate to the ultimate focus of the legislature--the mere use of a firearm.  Thus, we look to the element, "use of a firearm," rather than "causation of death," as being the proper factor to analyze.

Under the first theory of double enhancement set forth above, we do not find any double enhancement violation.  First degree murder does not require the use of a firearm.  Specifically, use of a firearm is not an essential element of first degree murder and the State is not required to prove the use of a firearm in establishing that someone committed first degree murder.  Clearly, first degree murder can be committed in any number of ways.  All the State was required to prove was that defendant here killed her husband and that she had the requisite intent in doing so. 
 People v. Sykes
, 341 Ill. App. 3d 950, 982-93, 793 N.E.2d 816 (2003).  Because 
the personal use of a firearm factor was not an inherent or essential element of first degree murder and it was only used to impose a longer sentence, there is no double enhancement.  See 
Moore
, 343 Ill. App. 3d at ___ (holding that there was no double enhancement in connection with the 25-year to life enhancement provision with respect to murder).

Similarly, under the second theory set forth above, there was no double enhancement.  The use of a firearm element was not used, in the first instance, to enhance or increase the first degree murder offense that defendant committed, nor to enhance or increase her 20-year sentence for first degree murder.  Thus, there can be no "use again" to further enhance her offense or penalty for first degree murder.

Accordingly, we conclude that the 25-year firearm enhancement provision does not constitute a double enhancement on the basis that the proper factor to look to regarding application of the provision is the use of a firearm, not the causation of death.

[NONPUBLISHABLE MATERIAL UNDER SUPREME COURT RULE 23 REMOVED HERE]

CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

WOLFSON, P.J., and CAHILL, J., concur.

FOOTNOTES
1:
Other cases have addressed the constitutionality of certain amendments added by Public Act 91-404 on proportionate penalty grounds with respect to other offenses.  In 
People v. Hill
, 199 Ill. 2d 440, 771 N.E.2d 374 (2002), the court concluded that the 15-year enhancement for committing home invasion while armed with a firearm did not violate the proportionate penalties clause of the Illinois Constitution.  
Hill
, 199 Ill. 2d at 451.  In 
People v. Walden
, 199 Ill. 2d 392, 769 N.E.2d 928 (2002), the court concluded that the 15-year enhancement for committing armed robbery while in possession of a firearm violated the proportionate penalties clause of the Illinois Constitution.  
Walden
, 199 Ill. 2d at 396-97.  See also 
People v. Garcia
, 199 Ill. 2d 401, 770 N.E.2d 208 (2002) (same holding as 
Walden
).  In 
People v. Morgan
, 203 Ill. 2d 470, 786 N.E.2d 994 (2003), the court concluded that the 15-20-25 to life provision enhancement to the attempt statute, specifically attempted first degree murder, violated the proportionate penalties clause of the Illinois Constitution.  
Morgan
, 203 Ill. 2d at 491-92.  Lastly, in 
Moss
, the court concluded that the 15 and 20-year enhancements for committing armed robbery with the personal discharge of a firearm (20 years), aggravated vehicular hijacking while in possession of a firearm (15 years), and aggravated vehicular hijacking with the personal discharge of a firearm (20 years) violated the proportionate penalties clause of the Illinois Constitution.  
Moss
, 206 Ill. 2d at 531.  With respect to the 25-year enhancement for committing armed robbery with the personal discharge of a firearm that causes injury or death, the trial court had  explicitly found "no disproportionateness in the case of the 25 years to life enhancement in cases resulting [in] great bodily harm or death."  
Moss
, 206 Ill. 2d at 532.  The 
Moss
 court concluded that the defendants had presented no argument sufficient to dissuade it from deviating from the trial court's finding.  
Moss
, 206 Ill. 2d at 532.

2:
The third test is not involved in this appeal because defendant does not raise such a challenge.

3:
This argument is made in a footnote, without ample argument or any citation to authority and, therefore, we do not address it.  188 Ill. 2d R. 341(e)(7).

4:
Defendant has not cited, nor has our independent research disclosed, any case in which a trial court sentenced a defendant found guilty of murder that was accompanied by brutal and heinous conduct to 20 years' imprisonment.

5:
In this regard, we note that the challenges to the California statute have been made on the basis of constituting cruel and unusual punishment.  We believe the distinction to be one without a difference because the cruel and unusual analysis, 
i.e.
, whether the provision is unconstitutional because it "shocks the conscience," and "offends fundamental notions of human dignity" (
In re Lynch
, 8 Cal. 3d 410, 424, 105 Cal. Rptr. 217, 226 (1972)), is similar to the analysis we must employ in a disproportionate penalties challenge.

6:
It should be noted that the court in 
Moss
 rejected such a challenge to the armed robbery statute.  With respect to the 25-year enhancement for committing armed robbery with the personal discharge of a firearm that causes injury or death, the trial court had explicitly found "no disproportionateness in the case of the 25 years to life enhancement in cases resulting [in] great bodily harm or death."  
Moss
, 206 Ill. 2d at 532.  The 
Moss
 court concluded that the defendants had presented no argument sufficient to dissuade it from deviating from the trial court's finding.  
Moss
, 206 Ill. 2d at 532.  See also 
People v. Moore
, 343 Ill. App. 3d 331, ___, 797 N.E.2d 217 (2003) (addressing a proportionate penalties challenge to the 25-year firearm enhancement provision with respect to murder under a different cross-comparison theory and concluding that a cross-comparison analysis was not applicable because of the different statutory purposes).

7:
We note that while the 
Moss
 court addressed double enhancement, it was with respect to armed robbery.  The 
Moss
 court's analysis is not applicable to the case 
sub judice
 because in 
Moss
 there was an initial enhancement of the offense from Class 1 to Class X.  The same situation is not present here.