(No. 96563.—

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MELODY BURDUNICE, Appellee.

*Opinion filed May 20, 2004.*

Lisa Madigan, Attorney General, of Springfield, and Edward D. Smith, State's Attorney, of Kankakee (Gary Feinerman, Solicitor General, Linda D. Woloshin and Jay Paul Hoffmann, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Lawrence M. Bauer and Sabrina S. Henry, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Robert J. Agostinelli, Deputy Defender, and Santiago

A. Durango, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE FITZGERALD delivered the opinion of the court:

In January 2000, the defendant, a correctional officer at the Kankakee County Detention Center, was charged with one count of unlawful delivery of a contraband handgun into a penal institution (see 720 ILCS 5/31A—1.2(c)(1) (West 1998)), one count of unlawful delivery of contraband cellular telephone batteries into a penal institution (see 720 ILCS 5/31A—1.2(c)(1) (West 1998)), one count of aiding escape (see 720 ILCS 5/31—7(b) (West 1998)), and one count of official misconduct (see 720 ILCS 5/31A—1.2(c)(1) (West 1998)). The defendant was convicted of the delivery of contraband cellular telephone batteries charge, acquitted of the other charges, and sentenced to 11 years' imprisonment.

On appeal, the defendant argued that Public Act 89—688, which, among its various provisions, added cellular telephone batteries to the list of contraband prohibited in penal institutions, violated the so-called single subject rule of the Illinois Constitution. See Ill. Const. 1970, art. IV, § 8(d). The defendant specifically contended that section 0.5 of the Act, which amended the State Employee Indemnification Act (5 ILCS 350/0.01 et seq. (West 1996)) to allow the Illinois Attorney General to file counterclaims in civil suits against state employees, did not relate to the subject of the remainder of the Act, criminal law. The appellate court agreed with the defendant and reversed her conviction and sentence. The court relied on People v. Foster, 316 Ill. App. 3d 855 (2000):

"The Foster court stated that Public Act 89—688 violates the single subject rule no matter how liberally construed. The court reasoned that civil actions, and specifically counterclaims, bear no natural and logical relation to the criminal law. The court ruled, therefore, that Public Act 89—688 violates the Illinois Constitution.

\* \* \*

Because we believe their analysis was logically sound in light of supreme court precedent, we must agree with the *Foster* court. The section of Public Act 89—688 that amends the Act concerns all State employees, not merely State employees whose work involves criminal law. Therefore, we concur with the *Foster* court's holding that Public Act 89—688 violates the single subject rule of the Illinois Constitution." 339 Ill. App. 3d 986, 988-89.

The State appealed. See 177 Ill. 2d R. 315(a). On the legal issue before us, our review proceeds *de novo*. See *People v. Sypien*, 198 Ill. 2d 334, 338 (2001).

## ANALYSIS

Article IV, section 8(d), of the 1970 Illinois Constitution states: "Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." Ill. Const. 1970, art. IV, § 8(d). The single subject rule prevents the passage of legislation which, standing alone on its own merits, would fail. See *Fuehrmeyer v. City of Chicago*, 57 Ill. 2d 193, 202 (1974). It also facilitates the passage of legislation in an orderly and informed manner. *Johnson v. Edgar*, 176 Ill. 2d 499, 514 (1997). "In sum, the single subject rule ensures that the legislature addresses the difficult decisions it faces directly and subject to public scrutiny, rather than passing unpopular measures on the backs of popular ones." *Johnson*, 176 Ill. 2d at 515.

We use a two-tiered analysis to determine whether an act violates the single subject rule: "First, we must determine whether the act, on its face, involves a legitimate single subject. [Citation.] Second, we must discern whether the various provisions within an act all relate to the proper subject at issue. [Citation.]" *Sypien*, 198 Ill. 2d at 339. In short, if the public act addresses a legitimate single subject, the dispositive question becomes whether the individual provisions of the Act have a "natural and logical" connection to that subject.

See *People v. Boclair*, 202 Ill. 2d 89, 109 (2002); *People ex rel. Ogilvie v. Lewis*, 49 Ill. 2d 476, 487 (1971) (observing that the single subject rule prohibits " ' "discordant provisions that by no fair intendment can be considered as having any legitimate relation to each other" ' "), quoting *People ex rel. Gutknecht v. City of Chicago*, 414 Ill. 600, 608 (1953), quoting *People ex rel. City of Chicago v. Board of County Commissioners*, 355 Ill. 244, 247 (1934). More eloquently stated:

> "The statute embraces but one subject or object where the matters included are such that, if traced back, they will lead the mind to the subject as the generic head. On the other hand, an act may not embrace unrelated or unconnected subjects or objects, but the various topics in the body of the act should and must be kindred in nature, and germane to the subject or object. *It has been said that there can be no surer test of compliance with the constitutional requirement of singleness of subject than that none of the provisions of an act can be read as relating or germane to any other subject than the one named in the title.*" (Emphasis added.) *Co-ordinated Transport, Inc. of Illinois v. Barrett*, 412 Ill. 321, 326-27 (1952).

We turn to the Act.

Public Act 89—688 was labeled "An Act in relation to criminal law," a legitimate single subject. See *People v. Malchow*, 193 Ill. 2d 413, 428-29 (2000); see also *Sypien*, 198 Ill. 2d at 339; *People v. Wooters*, 188 Ill. 2d 500, 512-13 (1999). Four of its five sections obviously do address criminal law. Section 1 amended the Criminal Code of 1961 by, *inter alia*, adding a definition of "[e]lectronic contraband" that included cellular telephone batteries, to the list of items which persons cannot bring into a penal institution. See 720 ILCS 5/31A—1.1(c)(2)(xi) (West 1996). Section 1.7 amended the Statewide Grand Jury Act (see 725 ILCS 215/1 *et seq.* (West 1996)); section 2 amended the Violent Crime Victims Assistance Act (see 725 ILCS 240/1 *et seq.* (West 1996)), and section 5 amended the Unified Code of Corrections (730 ILCS 5/1—

1—1 *et seq.* (West 1996)). Certainly, "substantive criminal law and correctional system administration fall squarely under the umbrella of the criminal justice system" (*Boclair*, 202 Ill. 2d at 113), and these four sections of the act satisfy the single subject rule. The State aptly frames the issue before us: "The only question is whether section 0.5 [of the act] also relates to criminal or correctional matters."

Section 0.5 provides:

"The Attorney General may file a counterclaim on behalf of a State employee, provided:

(1) the Attorney General determines that the State employee is entitled to representation in a civil action under this Section;

(2) the counterclaim arises out of any act or omission occurring within the scope of the employee's State employment that is the subject of the civil action; and

(3) the employee agrees in writing that if judgment is entered in favor of the employee, the amount of the judgment shall be applied to offset any judgment that may be entered in favor of the plaintiff, and then to reimburse the State treasury for court costs and litigation expenses required to pursue the counterclaim. The balance of the collected judgment shall be paid to the State employee." Pub. Act 89—866, eff. June 1, 1997 (amending 5 ILCS 350/2 (West 1996)).

The State argues that the appellate court here, and in *Foster*, erred in holding that the act violated the single subject rule because those courts "failed to properly examine the purpose behind the amendment contained in section 0.5." The State concedes that section 0.5 provides for counterclaims in civil cases, but asserts that this fact does not end our inquiry. According to the State, the legislative debates show that the General Assembly intended section 0.5 to allow the Attorney General to file counterclaims on behalf of Department of Corrections (DOC) employees sued by inmates. Citing *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341 (1999), and *People v. Cervantes*,

189 Ill. 2d 80 (1999), the State asserts, "This court has looked to the legislative debates on the act in question in order to determine the purpose of that section."

In *Arangold*, we briefly noted that "the original bill introduced in the Senate, the subsequent conference committee report, and the final enactment" all pertained to the single subject of the state budget. *Arangold Corp.*, 187 Ill. 2d at 352-53. In *Cervantes*, we observed, in *obiter dicta*, that, even looking beyond the face of the act at issue to the legislative debates, the Senate and House journals, and the legislative digest, we discerned no intent to link welfare benefits to the single subject of the Act, neighborhood safety. *Cervantes*, 189 Ill. 2d at 94. In neither *Arangold* nor *Cervantes*, however, were we faced with an argument that legislative materials contradicted the plain language of the act, so that an obvious single subject rule violation was somehow excusable.

Our analysis under the single subject rule is akin to statutory construction. In determining whether a provision of an act relates to a putative single subject, we must determine what that provision means. This begins and ends with the plain language of the provision where that language is clear. See *Allstate Insurance Co. v. Menards, Inc.*, 202 Ill. 2d 586, 591 (2002); *Petersen v. Wallach*, 198 Ill. 2d 439, 445 (2002).

> "Although the primary purpose of statutory construction is to ascertain legislative intent [citation], a statute is not interpreted by its sponsor's comments when introducing legislation, nor is it interpreted by the statements of senators or representatives who voted to pass the legislation formulating the statute. Rather, a statute is interpreted by its language, which if certain and unambiguous, must be given effect as written." *People v. James*, 246 Ill. App. 3d 939, 948 (1993).

Thus, the appellate court in *Foster* correctly called the State's reference to facts beyond the face of the act inapposite. See *Foster*, 316 Ill. App. 3d at 860. Though the State maintains that the defendant ignores that "it

is absolutely clear from the legislative history that section 0.5 was directed at inmate suits brought against DOC employees," the State ignores that it is also absolutely clear the plain language of section 0.5 is not limited to such suits. As Representative Lang presciently stated in addressing separate concerns with Public Act 89—688, "I don't think by legislative intent you can change the clear language in the Bill." 89th Ill. Gen. Assem., House Proceedings, May 24, 1996, at 71 (statements of Representative Lang).

An act violates the single subject rule when its plain language unmistakably embraces more than one subject. See *Cervantes*, 189 Ill. 2d at 94 ("A legislative enactment violates the single subject requirement 'when the statute, on its face, clearly embraces more than one subject' "), quoting *People v. Dunigan*, 165 Ill. 2d 235, 254-55 (1995); accord *Foster*, 316 Ill. App. 3d at 860 ("the natural and logical relations of a bill's provisions to that bill's subject are to be measured on the face of the bill"). If we must pierce the clouds of the legislative process to divine the intent in enacting a single provision, perhaps the relation of that provision to the remainder of the act is less than "natural and logical." Here, the act on its face encompasses two subjects—matters relating to criminal law and matters relating to civil lawsuits against state employees—and accordingly violates the single subject rule.

As a last resort, the State asks us to rewrite the statute to clarify that the Attorney General can file counterclaims only in suits against DOC employees. We refuse to engage in such judicial legislation. See *Gordon v. Department of Transportation*, 99 Ill. 2d 44, 47 (1983) ("It is the legislature's task to codify public policy; we refrain from undertaking such impermissible judicial legislation").

## CONCLUSION

For the reasons that we have discussed, we affirm the judgment of the appellate court.

*Affirmed.*