# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Borys*, 2013 IL App (1st) 111629

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHERI BORYS, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-1629 |
| Filed | August 23, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for aggravated driving under the influence while her license was revoked for a prior DUI violation, the appellate court held that the fact that the arresting officer's vehicle was not equipped with audio/video recording equipment as required by statute was not grounds for reversal and the error in admitting his testimony concerning one field sobriety test without a proper foundation was harmless, but the DNA analysis and storage fee was vacated on the ground that defendant was already registered in the DNA data bank. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-C2-20643; the Hon. Garritt E. Howard, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Patrick Morales-Doyle, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Amy M. Watroba, and Haley Peck, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | PRESIDING JUSTICE LAMPKIN delivered the judgment of the court, with opinion. |
| | Justice Reyes concurred in the judgment and opinion. |
| | Justice Hall specially concurred, with opinion. |

## OPINION

¶ 1    After a bench trial, defendant Cheri Borys was convicted of aggravated driving under the influence (DUI) for driving under the influence of alcohol while her driver's license was revoked due to a previous DUI violation. She was sentenced to an 18-month prison term. On appeal, she contends that: (1) the trial court erred by permitting the arresting officer to testify about events during the traffic stop because his patrol vehicle was not equipped to make an audio/video recording as mandated by statute; (2) the trial court erred by admitting the officer's testimony concerning the horizontal gaze nystagmus (HGN) test because he did not conduct the test in accordance with established guidelines; and (3) the DNA identification system fee cannot be assessed against defendant because her DNA has already been collected and placed in the Illinois database.

¶ 2    We hold that: (1) although the arresting officer's vehicle failed to have recording equipment as required by statute, the admission of his testimony concerning the traffic stop was not plain error and did not constitute grounds for reversal based on ineffective assistance of counsel; (2) the trial court's error in admitting the officer's testimony concerning the HGN test without a proper foundation was harmless; and (3) the statutory fee for DNA analysis and storage should be vacated. Accordingly, we affirm defendant's conviction and sentence but vacate the imposition of the DNA fee.

¶ 3                                  I. BACKGROUND

¶ 4    On September 16, 2009, Illinois State Trooper Christopher Price arrested defendant for DUI. Defendant was also ticketed for driving while her license was revoked, speeding and improper lane usage. At the time of defendant's arrest, Trooper Price's patrol vehicle was not equipped with video or audio recording equipment. Defendant was charged with

aggravated DUI for driving under the influence of alcohol while her license was revoked due to a previous DUI. The State nol-prossed the misdemeanor DUI and improper lane usage charges.

¶ 5    At the bench trial, Trooper Price testified that he had four years of experience as an Illinois State Police officer and received about 40 hours of training on the detection of impaired drivers at the police academy in August 2006. As part of his training, he was taught how to administer various field sobriety tests, including the HGN test, the walk-and-turn test, and the one-leg-stand test. He passed both a written and practical examination on those tests and also received supplemental training in August of 2008.

¶ 6    On the date in question, he was assigned a vehicle that was not equipped with a video camera, and that fact had "been documented." While he was parked on the side of Interstate-294, he tracked the speed of passing motorists with his properly calibrated LIDAR equipment. He was located in a construction zone that was marked by cones and barrels and had a posted speed limit of 45 miles per hour. At 2:47 a.m., he observed defendant drive her vehicle in the construction zone and measured the speed of her vehicle three times. According to his equipment, defendant was traveling at speeds of 99 miles per hour, 103 miles per hour, and 105 miles per hour. He followed defendant's vehicle and saw it drift from the far right lane onto the right shoulder and then back into the far right lane. He activated his emergency lights and curbed defendant's vehicle.

¶ 7    He approached defendant's vehicle and had a conversation with her while her window was rolled down. She stated that she could not have been driving as fast as the speeds measured by Price and claimed that other vehicles that had been near her were speeding. Price, however, testified that no vehicles were near defendant when he measured her speed. He asked her for her license, and she stated that she did not have it because it was revoked for a prior DUI. He observed that her eyes were glassy and bloodshot, and a strong odor of alcohol emanated from her breath. Defendant stated that she had four bottles of beer right before she started driving. When defendant walked toward the front of her vehicle to perform the field sobriety tests, she swayed and stumbled, and Price had to assist her to keep her from falling.

¶ 8    First, Price conducted the HGN test to detect unsteadiness of the eyes, which was an indication of possible alcohol consumption. Over the defense's foundation objection, Price testified that he first determined that defendant had equal tracking with both her eyes by holding his finger about four inches from her eyes, asking her to follow his finger with her gaze only, and sweeping his finger back and forth, left to right, several times. Then, Price looked for distinct and sustained nystagmus in either eye by passing his finger in front of defendant's face to the left and right for a count of two seconds each. When defendant's eyes gazed all the way to either the left or right, *i.e.*, maximum deviation, he saw the jerkiness indicative of distinct and sustained nystagmus in both eyes. Moreover, the nystagmus or jerkiness began before his finger reached a 45-degree angle. Based on defendant's performance on the HGN test, Price believed that she may have been under the influence of alcohol.

¶ 9    Next, Price conducted the walk-and-turn test, which defendant chose to do barefoot. He

told defendant to stand with her arms down to her side and her feet touching heel-to-toe while he gave her instructions. He instructed her to take nine steps on an imaginary line, counting out loud and touching heel-to-toe for each step; take three small steps to turn around; return taking nine heel-to-toe steps and counting aloud; and then stop and turn around. While Price was giving those instructions, defendant was unable to maintain her balance and placed her right foot parallel to her left foot. Moreover, she started the test before instructed to do so and before Price had concluded his instructions. In addition, she failed to walk heel-to-toe and, instead, walked with about six inches between each step she took.

¶ 10 Price did not conduct the one-leg-stand test because defendant said that she had a knee injury, *i.e.*, "housewife knee syndrome." Price took defendant into custody, went to the police station, waited more than the required 20 minutes for any mouth alcohol to dissolve, and then read defendant the warning about possible consequences for refusing to take the Breathalyzer test. Defendant refused to take that test. After she was Mirandized, defendant agreed to speak to Price. She was asked basic questions but did not know the date or the time. When Price asked what she had been doing for the last three hours, she said she had argued with her boyfriend, went to the bar and drove home. Based on his training and experience, defendant's speeding, improper lane driving and admission to consuming alcohol just prior to driving, and her performance on the field sobriety tests, Price believed that she was definitely driving under the influence of alcohol, the effect of alcohol on her that morning was extreme, and she was unfit to drive an automobile.

¶ 11 The State submitted a certified copy of defendant's driver's abstract, which indicted that her driving privileges were revoked on September 16, 2009.

¶ 12 Dr. Reynaldo Paras was qualified as an expert in the field of medicine and testified that defendant was his patient. When he examined her in 2008 and 2010, she had degenerative osteoarthritis in her knees and crepitation. Dr. Paras was not familiar with field sobriety tests, but opined that defendant's knee condition would affect her performance on the one-leg-stand test and would possibly affect her performance on the walk-and-turn test. However, defendant's arthritis was not very severe, and her condition did not prevent her from walking or standing up straight and would not cause her to sway.

¶ 13 The trial court found defendant guilty of all charges and denied her motion for a new trial. She was sentenced to 18 months' imprisonment.

¶ 14 II. ANALYSIS

¶ 15 A. Unrecorded Traffic Stop

¶ 16 Defendant argues that Trooper Price's testimony was inadmissible because his patrol vehicle, on September 16, 2009, was not equipped with a video recording camera as required by section 30(b) of the State Police Act (Act) (20 ILCS 2610/30(b) (West 2008)). Specifically, section 30(b) required the Department of State Police to install, by June 1, 2009, in-car video camera recording equipment in all patrol vehicles. The Act provided that "[a]ny enforcement stop resulting from a suspected violation of the Illinois Vehicle Code shall be video and audio recorded." 20 ILCS 2610/30(e) (West 2008). The Department of State Police is required to retain the recordings for a storage period of at least 90 days. 20 ILCS

-4-

2610/30(f) (West 2008). The officer operating the patrol vehicle is required to report any technical difficulties, failures, or problems with the recording equipment to his commander, who must make every reasonable effort to correct and repair the equipment and "determine if it is in the public interest to permit the use of the patrol vehicle." 20 ILCS 2610/30(h) (West 2008).

¶ 17        Notably, defendant does not argue that Price's testimony should have been inadmissible as a sanction for a discovery violation. A discovery violation may be analyzed as either a due process violation under *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), or under Illinois Supreme Court Rule 415(g)(i) (eff. Oct. 1, 1971). The Supreme Court of the United States in *Illinois v. Fisher* made it clear that when evidence is potentially useful but is not material exculpatory evidence, then failure to preserve potentially useful evidence does not violate due process unless the defendant can show bad faith by the prosecution. *Illinois v. Fisher*, 540 U.S. 544, 548-49 (2004) (*per curiam*). However, to establish a discovery violation under Illinois Supreme Court Rule 415(g)(i), it is only required to show that "a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto." (Internal quotation marks omitted.) *People v. Kladis*, 403 Ill. App. 3d 99, 105 (2010).

¶ 18        While defendant does not argue that a discovery violation occurred here, she contends the alleged statutory violation should be treated in the same manner as a discovery violation, "otherwise the State Police would be incentivized to disobey the statutory mandate and simply not record traffic stops so as to avoid being required to disclose them during the discovery process." Defendant argues that noncompliance with the recording requirements generally injures a defendant's right to a fair trial when the case arises from a traffic-enforcement stop because there is no substitute for such objective evidence. Defendant asserts that "many cases involving traffic stops, and particularly DUI arrests, often now turn completely on recordings captured by in-car video and audio recording equipment or the absence of such evidence," and "there is no way belatedly to make up for the failure to record a traffic stop."

¶ 19        Defendant argues that the appropriate, narrowly tailored remedy for the State's noncompliance with section 30 of the Act is to remand for a new trial where the State is barred from introducing Trooper Price's testimony about events that should have been captured on the mandated audio and video recordings. To support this argument, defendant cites authority for the proposition that a trial court's power to impose sanctions in a criminal case is not limited to discovery violations because the court has inherent authority to insure the defendants a fair trial and may impose sanctions to do so. See *People v. Lawson*, 67 Ill. 2d 449, 456 (1977) (a trial court may dismiss indictments on the basis of substantial prejudicial preindictment or prearrest delay); *People v. Ziobro*, 242 Ill. 2d 34, 44 (2011) (where the police failed to comply with a court rule concerning time limits to schedule first appearances in traffic offense cases, the trial court abused its discretion by dismissing the charges without a showing of impracticability, and the rule was directory, not mandatory); *People v. Leon*, 306 Ill. App. 3d 707, 716 (1999) (no abuse of discretion where the trial court sanctioned the State by striking certain discovery materials and precluding testimony based on the State's violation of a discovery rule).

¶ 20        Defendant has forfeited review of this issue by failing to raise it in a motion to suppress,

failing to object to Price's testimony at trial on this basis, and by failing to raise the issue in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant argues, however, that her claim should be reviewed as second-prong plain error or, alternatively, because trial counsel was ineffective.

¶ 21 A reviewing court finds plain error when "(1) a clear or obvious error occurred and the evidence [was] so closely balanced that the error threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error [was] so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Defendant bears the burden of persuasion under both prongs of the plain error analysis. *People v. Herron*, 215 Ill. 2d 167, 182 (2005). Before invoking plain error, a reviewing court must first determine whether any error occurred at all. *People v. Walker*, 232 Ill. 2d 113, 124-25 (2009).

¶ 22 We find that no error occurred in the admission of Trooper Price's testimony. The admission of evidence is within the trial court's discretion and should not be reversed absent a clear showing of abuse of that discretion. *People v. Caffey*, 205 Ill. 2d 52, 115 (2001). "An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful or unreasonable [citation] or where no reasonable person would agree with the position adopted by the trial court [citations]." *People v. Becker*, 239 Ill. 2d 215, 234 (2010). Nothing in the plain and unambiguous language of section 30 of the Act indicates that an officer's testimony concerning a traffic stop is inadmissible if his patrol vehicle does not have the required video recording equipment. See *People v. Chapman*, 2012 IL 111896, ¶ 23 (the plain and ordinary meaning of the statutory language itself is the most reliable indicator of legislative intent and the reviewing court considers the statute in its entirety). Section 30 is a legislative directive to the Department of State Police to install recording equipment in squad cars and to preserve the recordings for a minimum time period; it does not address criminal procedure or the admission of evidence in a criminal trial.

¶ 23 Furthermore, even assuming, *arguendo*, that the Department of State Police was not in compliance with section 30(b) by not installing recording equipment in a particular patrol car by the June 1, 2009 deadline, the record shows that Price did not violate section 30 where he used the car assigned to him and the car's lack of recording equipment had been documented with his superiors, who had discretion to determine if it was in the public interest to permit the use of a patrol vehicle upon notice of any technical difficulties, failures, or problems with the in-car video camera recording equipment or recording medium. See 20 ILCS 2610/30(h) (West 2008). In addition, because no recording was made, the prosecution cannot be said to have violated section 30 by failing to preserve and produce a nonexistent recording.

¶ 24 Defendant asserts that, under the mandatory/directory dichotomy, the requirements of section 30 of the Act are mandatory, not directory, provisions. We disagree. Whether a statutory command is mandatory or directory is a question of statutory interpretation, which we review *de novo*. *People v. Robinson*, 217 Ill. 2d 43, 54 (2005). "[T]he mandatory-directory dichotomy *** concerns the consequences of a failure to fulfill an obligation" (*id.* at 52); it " 'denotes whether the failure to comply with a particular procedural step will or

will not have the effect of invalidating the governmental action to which the procedural requirement relates' " (*id.* at 51-52 (quoting *Morris v. County of Marin*, 559 P.2d 606, 611 (Cal. 1977))). Statutes are mandatory if the intent of the legislature dictates a particular consequence for failure to comply with the provision. *Pullen v. Mulligan*, 138 Ill. 2d 21, 46 (1990). "In the absence of such intent the statute is directory and no particular consequence flows from noncompliance." *People v. Delvillar*, 235 Ill. 2d 507, 515 (2009). Under the mandatory/directory dichotomy, language issuing a procedural command to a government official is presumed to indicate an intent that the statute is directory. This presumption is overcome when (1) there is negative language prohibiting further action in the case of noncompliance, or (2) the right the provision is designed to protect would generally be injured under a directory reading. *Id.* at 517.

¶ 25    Neither condition applies in this case. Section 30 of the Act lacks any negative language prohibiting further action if the Department of State Police does not comply with the recording equipment installation requirement by the June 2009 deadline. Furthermore, a defendant's right to a fair trial would not generally be injured under a directory reading of section 30 because the legislature clearly recognized that not all traffic stops would be recorded where section 30 gives the Department of State Police discretion to permit the use of vehicles despite recording failures or problems.

¶ 26    Defendant cites *People v. Kladis*, 2011 IL 110920, to support her claim that Price's testimony was inadmissible, but defendant's reliance on *Kladis* is misplaced. *Kladis* was decided about one year after Price testified at the bench trial in the instant case. Furthermore, *Kladis* addressed a different situation from the instant case. In *Kladis*, the defendant, who was arrested for a misdemeanor DUI, moved for sanctions for a discovery violation where a video recording of her traffic stop was made, she requested–five days after her arrest–that the State produce the video, the State did not timely convey that request to the police department, and the police department automatically erased the video 30 days after the arrest. *Id.* ¶¶ 3-6. The trial court found that a discovery violation occurred and sanctioned the State for destroying the evidence by barring the State from introducing testimony relating to what was contained on the tape. *Id.* ¶¶ 8-9. The State appealed, arguing that its failure to preserve the recording was not sanctionable because video recordings were not included within the list of discoverable items in misdemeanor actions. *Id.* ¶ 21. Both the appellate and supreme courts upheld the sanction imposed by the trial court.

¶ 27    Specifically, the supreme court held that the State's failure to produce and preserve the video recording constituted a discovery violation because those recordings were discoverable in misdemeanor cases where the recordings were a routine and integral part of traffic stops and objectively documented the occurrence by capturing the conduct and words of both parties. *Id.* ¶ 29. The court noted that recent legislative enactments regarding recordings of traffic stops–including section 30 of the Act–confirmed the significant evidentiary value and relevance of the recordings to assist in the truth-seeking process and provide objective evidence. *Id.* ¶¶ 30-34. The court also found no abuse of discretion concerning the trial judge's sanction, which was narrowly tailored to allow the officer to testify about defendant's behavior after she was placed in the squad car and about any erratic driving by defendant before the recording equipment was activated. *Id.* ¶¶ 41-45.

¶ 28    *Kladis* does not support defendant's assertion that the absence of functioning video equipment in a patrol car renders an officer's testimony about a traffic stop inadmissible at a criminal trial. Rather, *Kladis* simply found no abuse of discretion when the trial court precluded the officer's testimony concerning the recorded portion of the traffic stop as a sanction for the State's discovery violation where the State failed to tell the police department to preserve the recording. Unlike in *Kladis*, the State in the instant case did not destroy an existing, discoverable piece of evidence. Moreover, defendant did not allege before or at the trial that a discovery violation occurred. In addition, section 30 of the Act gives the Department of State Police discretion to continue using patrol cars despite recording problems and technical difficulties based upon the public interest.

¶ 29    Even assuming, *arguendo*, that an error occurred, defendant has failed to meet her burden under the second prong of the plain error analysis to show a clear or obvious error that was so fundamental that she was denied a fair trial. The alleged error here is not similar to the types of errors included in the limited class of structural errors recognized by the United States Supreme Court as subject to automatic reversal. See *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009) (these structural errors include the right to counsel, the denial of the right of self-representation, the denial of the right to a public trial, and the denial of the right to a trial by jury resulting from a defective reasonable doubt instruction). Although a recording of defendant's traffic stop could have provided objective evidence and assisted the truth-seeking process, it was not indispensable to a fair trial, particularly where there was no discovery violation or indication of bad-faith action by the police or the prosecution. Defendant has presented no evidence that her trial was unfair, and we cannot presume that it was unfair simply because a recording of the traffic stop was not made. We cannot conclude that Price's testimony was inadmissible or that, without an accompanying video, it challenged the integrity of the judicial process. Price was subject to extensive cross-examination by defense counsel, which included questions about the absence of a videotape. The record shows that defendant received a fair trial, and her claims are speculative and insufficient to establish second-prong plain error.

¶ 30    Defendant also argues that her counsel was ineffective for failing to file a motion to suppress Price's testimony based on the police's failure to record the traffic stop as required by Section 30 of the Act. Defendant asserts the motion would have been granted and the outcome of her trial would have been different.

¶ 31    To succeed on a claim that counsel's assistance was so defective as to require reversal of a conviction, defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not incompetence. *People v. Powell*, 355 Ill. App. 3d 124, 141 (2004). When examining a claim of ineffective assistance of counsel, the reviewing court looks at the entire record and not just the isolated instance of alleged incompetence. *People v. Flores*, 128 Ill. 2d 66, 107 (1989). If defendant fails to prove prejudice, the reviewing court need not determine whether counsel's performance constituted less than reasonable assistance. *People v. Kuntu*, 196 Ill. 2d 105, 130 (2001).

¶ 32    The defendant has the burden to show a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The decision whether to file a motion to suppress is generally a matter of trial strategy and thus entitled to great deference. *People v. White*, 221 Ill. 2d 1, 21 (2006). However, a defendant can show she was prejudiced by counsel's failure to file a motion to suppress if there is a reasonable probability that the motion would have been granted and the outcome of the trial would have been different had the evidence been suppressed. *People v. Bew*, 228 Ill. 2d 122, 128-29 (2008).

¶ 33       Defendant argues there was a reasonable probability that a motion to suppress Price's testimony would have been granted because (1) he clearly failed to comply with the recording mandate, and (2) on July 22, 2010, the appellate court in *People v. Kladis*, 403 Ill. App. 3d 99, 119-20 (2010), had ruled that the trial court did not abuse its discretion by suppressing the officer's testimony as a sanction for the State's destruction of the video, which was a discovery violation. Defendant also argues that the outcome of the trial would have been different if this evidence had been suppressed because it would have kept out most of the State's inculpatory evidence, including defendant's statements to Price before her arrest, Price's observations that defendant smelled of alcohol and had bloodshot eyes, and defendant's performance on the field sobriety tests when she exited her car. Defendant contends that the remaining evidence–that she was speeding, that her car drifted onto the shoulder, and her refusal to take a Breathalyzer test–would not have been enough to sustain the State's burden of proof.

¶ 34       We do not agree that Price's observations concerning defendant's bloodshot eyes and the strong odor of alcohol on her breath would have been suppressed because those facts would not have been recorded by a dashboard camera in a patrol vehicle or a wireless microphone worn by the officer. Ultimately, however, we conclude that defendant's claim of ineffective counsel fails because she cannot establish prejudice where there was not a reasonable probability that a motion to suppress Price's testimony would have been granted. As discussed above, Price did not violate section 30 of the Act where his superiors were notified that the vehicle did not contain recording equipment and had the statutory discretion to permit the use of such vehicles despite recording problems and technical difficulties. Furthermore, *Kladis*, as discussed above, addressed an entirely different situation involving the State's discovery violation for destroying an existing piece of evidence.

¶ 35                                         B. HGN Test

¶ 36       Defendant contends the trial court erred by admitting Price's testimony concerning the HGN test because (1) the State failed to establish that Price was properly trained in conducting HGN tests, and (2) Price failed to conduct that test in accordance with the guidelines of the National Highway Transportation Safety Administration (NHTSA). Trial counsel objected at the trial to Price's testimony concerning the HGN test on the grounds of foundation and his failure to follow NHTSA guidelines, and counsel included this issue in his motion for a new trial.

¶ 37       "[E]vidence of HGN field-sobriety testing, when performed according to the NHTSA

protocol by a properly trained officer, is admissible under the *Frye* test for the purpose of showing whether the subject has likely consumed alcohol and may be impaired." *People v. McKown*, 236 Ill. 2d 278, 306 (2010). Concerning the qualifications of the individual witness, "a proper foundation must be laid, including a showing that the witness is properly trained and that he performed the test in accordance with proper procedures." *Id.* A properly trained officer who followed proper procedures may give expert testimony regarding the results of the HGN test and "may use the HGN test results as a part of the basis for his opinion that the defendant was under the influence and impaired." *Id.*

¶ 38     First, defendant contends the State did not meet the foundational threshold for HGN testimony because Price testified that he received merely 40 total hours of training in all aspects of the detection of impaired drivers at the police academy and he did not indicate how much of those 40 hours was dedicated to HGN testing in particular. Defendant also contends the evidence showed that Price did not follow the proper procedures when he administered the HGN test on defendant. Specifically, defendant argues that Price violated the NHTSA guidelines, which required the examining officer to place a stimulus 12 to 15 inches from the subject's eyes and move the stimulus from left to right while the officer looks for (1) the lack of smooth pursuit in following the stimulus, (2) distinct and sustained nystagmus when the eye is held at maximum deviation, and (3) the onset of nystagmus before the stimulus reaches an angle of 45 degrees. According to the record, Price testified that he placed the stimulus about four inches from defendant's eyes. Further, defendant argues Price also failed to testify that he: tested defendant's eyes for resting nystagmus; asked her if she had any medical conditions that might affect the test results; tested each of her eyes individually for each of the three clues or that he repeated each procedure; held the stimulus still for a minimum of four seconds when he was testing for distinct and sustained nystagmus at maximum deviation; and moved the stimulus at a speed that would take four seconds to reach the edge of defendant's shoulder when he tested for the onset of nystagmus.

¶ 39     We find Price's testimony that he placed the stimulus four inches from defendant's eyes dispositive on the issue of admissibility. Our supreme court has adopted the HGN testing requirements as outlined in the NHTSA Manual. *McKown*, 236 Ill. 2d at 306. Our review of the NHTSA, DWI Detection and Standardized Field Sobriety Student Manual, VIII-6 (2006), *available at* http://www.isp.state.il.us/docs/2006dwisfst.pdf, indicates that the stimulus must be positioned approximately 12 to 15 inches from the suspect's nose and slightly above eye level. How far the tester positions the stimulus from the suspect's nose is a critical factor in estimating the 45-degree angle to check for the onset of nystagmus. *Id.* Because Price's testimony established that he failed to perform the HGN test in accordance with the NHTSA guidelines, the trial court erred by admitting, in the absence of a proper foundation, Price's testimony regarding the HGN test he performed.

¶ 40     Despite the trial court's error in admitting Price's HGN testimony, we find that the competent evidence against defendant was overwhelming and the error was harmless. "Error will be deemed harmless and a new trial unnecessary when 'the competent evidence in the record establishes the defendant's guilt beyond a reasonable doubt and it can be concluded that retrial without the erroneous admission of the challenged evidence would produce no different result.' [Citation.]" *McKown*, 236 Ill. 2d at 311.

-10-

¶ 41    Here, the properly admitted evidence showed that Price initiated a traffic stop on defendant's vehicle after observing her, at 2:47 a.m., drive in a 45-mile-per-hour construction zone at speeds of 99, 103, and 105 miles per hour. He also saw her drift from her lane onto the shoulder of the road and then back into her lane. He observed that she had bloodshot eyes and a strong odor of alcohol on her breath. She admitted that she drank four bottles of beer before driving and her license was revoked due to a prior DUI. When she exited her car, she swayed and stumbled, and Price had to assist her to keep her from falling. She failed the walk-and-turn test due to her inability to follow directions, inability to maintain her balance and stand heel-to-toe while receiving instructions, by starting the test before she was told to do so, and by walking with six inches between each step she took. When she spoke to Price at the police station, she did not know the date or time and admitted that she had spent the prior three hours arguing with her boyfriend, going to the bar and then attempting to drive home.

¶ 42    Furthermore, the trial court found that Price was a "very credible witness" and gave "candid" and "straightforward" testimony concerning his observations of defendant and the statements she made. *People v. Diaz*, 377 Ill. App. 3d 339, 344-45 (2007) (a conviction for DUI may be sustained based solely on the testimony of the arresting officer). Moreover, defendant's refusal to submit to a breath test after her arrest constitutes circumstantial evidence of her guilt. *People v. Garstecki*, 382 Ill. App. 3d 802, 813 (2008); *People v. Garriott*, 253 Ill. App. 3d 1048, 1052 (1993). Although defendant's doctor testified that defendant's degenerative osteoarthritis in her knees would possibly affect her performance on the walk-and-turn test, the doctor admitted that he was not familiar with field sobriety tests, defendant's arthritis was not very severe, and her condition would not cause her to sway. Even excluding evidence of the HGN testing, the remaining evidence was more than sufficient for the fact-finder to find defendant guilty beyond a reasonable doubt and a new trial without evidence of HGN testing would not produce a different result.

¶ 43                                    C. DNA Fee

¶ 44    Defendant contends the trial court improperly levied a $200 "State DNA ID system" assessment against defendant. The State concedes, and we agree, that this charge should be vacated. See *People v. Marshall*, 242 Ill. 2d 285 (2011) (pursuant to section 5-4-3 of the Unified Code of Corrections (730 ILCS 5/5-4-3(j) (West 2008)), a trial court is authorized to order the taking, analysis and indexing of a qualifying offender's DNA and the payment of the analysis fee only where that defendant is not currently registered in the DNA data bank). Because defendant is currently registered in the DNA data bank, this fee is vacated.

¶ 45                                    III. CONCLUSION

¶ 46    For the foregoing reasons, we affirm defendant's conviction and sentence but vacate the imposition of the DNA analysis and storage fee.

¶ 47    Affirmed in part and vacated in part.

¶ 48    JUSTICE HALL, specially concurring.

¶ 49    Given the facts of this case, I concur in the result reached by the majority. I write separately to express my concern that the legislature's failure to include mandatory statutory language in section 30(b) of the Act, requiring the Department of State Police to equip all of its patrol vehicles with in-car video camera recording devices by June 1, 2009, could have the practical effect of nullifying the legislative purpose underlying the statute by allowing law enforcement to simply ignore the requirement. More specifically, the legislature's failure to designate a penalty or consequence for noncompliance indicates that the requirement is directory rather than mandatory. See *People v. Delvillar*, 235 Ill. 2d 507, 514-16 (2009).

¶ 50    As a result, the requirements of section 30(b) of the Act could be circumvented in perpetuity if the Department of State Police simply decided not to install the video camera recording equipment in its patrol vehicles. See, *e.g.*, *Town of Mt. Pleasant v. Roberts*, 713 S.E.2d 278, 286 (S.C. 2011) (town's interpretation of statute requiring its patrol cars to be outfitted with video camera recording equipment was nonsensical where such interpretation would permit law enforcement to perpetually avoid complying with the statute by simply failing to request additional video cameras from the Department of Public Safety). In light of these concerns, I specially concur only with the result reached by the majority opinion.